In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00143-CR


______________________________




JOHNNY EARL SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 20,991




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 A high-speed chase through the streets of Greenville by a Hunt County deputy sheriff
resulted in the deputy's recovery of a sawed-off shotgun from the floor of the truck driven and
solely occupied by Johnny Earl Smith, a felon. In cause number 20,991 in the 196th Judicial
District Court of Hunt County, a jury found Smith guilty of unlawful possession of a firearm by
a felon. (1) Punishment, enhanced by two or more prior felony convictions, was assessed at thirty
years' imprisonment. (2)
 On appeal, Smith contends the evidence was legally and factually
insufficient to support his conviction. We affirm.

Facts

 The record reflects the following events. On January 7, 2002, Smith visited an
automobile dealership in the town of Quinlan. James Joseph, manager of the dealership,
recognized Smith as someone with whom the business had previously dealt and allowed Smith to
test drive a 1994 Ford extended cab pickup truck. Joseph informed Smith he was allowed to
drive the truck three miles in any direction from the dealership. After some time, concerned that
Smith had not returned from the test drive, Joseph contacted the sheriff's office and was advised
by the dispatcher to wait longer for Smith to return. Two days later, the Quinlan police chief
went to the dealership and, after being informed of Smith's failure to return the vehicle,
contacted the sheriff's department. The sheriff's department sent Deputy Henry Thomas
Grandfield to the dealership, where he took the report of the missing vehicle. 

 About four hours after taking this report, Grandfield was in Greenville, about twenty-five
miles away from Quinlan. There, Grandfield observed what he believed to be the truck Joseph
reported as stolen. When Grandfield began following this vehicle, the driver accelerated and
began passing quickly through the fairly heavy traffic. Grandfield turned on his vehicle's siren
and emergency lights and pursued the truck. Grandfield testified that, at times, speeds during the
three-mile chase reached seventy to eighty miles per hour through town and that the driver of the
pickup truck disregarded traffic signs and signals throughout the pursuit. Finally, the truck was
driven through a grassy field and onto a parking lot, where the driver attempted to pass between
two parked cars but failed, crashing and coming to rest on the hood of one. Grandfield then
arrested the driver, who identified himself as Johnny Earl Smith. 

 Grandfield made arrangements to have the truck impounded and inventoried. James
Frazier, an employee of a vehicle towing service, arrived to assist Grandfield. Because the front
portion of the truck was now positioned on the hood of another car, Frazier first removed the car
from beneath the truck. Then Frazier entered the truck to prepare it for towing and stepped on a
hard, cloth-covered object on the floorboard. There is some dispute as to whether Grandfield or
Frazier removed the object from the floorboard. Grandfield testified that Frazier brought him the
object; Frazier testified that he simply alerted the deputy, who then came and removed the
object. Grandfield unwrapped the object and found it was a sawed-off shotgun. 

 Smith presented testimony from his sister and a fellow inmate in an attempt to show he
was the victim of a conspiracy of dishonest law enforcement officials. Smith claimed he had
been an informant in the past and, by virtue of this involvement with law enforcement, had
considerable information concerning these officials who were conspiring to "get him." He
testified at the punishment phase of trial that, because of his knowledge, his life had been
threatened and he fled from Grandfield because he was afraid. Smith requested the trial court to
instruct the jury on the issues of duress and necessity. The trial court rejected these requested
instructions. (3) Smith's conviction and this appeal followed.

Analysis

 When an appellant challenges both legal and factual sufficiency of the evidence, the
reviewing court will determine first whether the evidence was legally sufficient to support the
verdict. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). We evaluate all
evidence, admissible or inadmissible, which the jury was permitted to consider. Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Ennis v. State, 71 S.W.3d 804, 810 (Tex.
App.-Texarkana 2002, no pet.). In reviewing the legal sufficiency of the evidence, we view the
evidence in the light most favorable to the verdict to determine whether a rational trier of fact
could have found each essential element of the offense charged beyond a reasonable doubt. 
Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We resolve inconsistencies in
testimony in favor of the verdict. Id.

 When reviewing the factual sufficiency of the evidence to support conviction, we
determine whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the
evidence weighed by the jury that tends to prove the elemental fact at issue and compare it with
the evidence that tends to disprove that fact. Id. While we review the jury's weighing of the
evidence and are authorized to disagree with its determination, we must afford it appropriate
deference so as to not intrude on the jury's province as judge of the weight and credibility of
witness testimony. Id.

 To prove unlawful possession of a firearm by a felon, the State must establish that the
accused was previously convicted of a felony offense and possessed a firearm after the
conviction and before the fifth anniversary of his release from confinement or from supervision
under community supervision, parole, or mandatory supervision, whichever date is later. (4) Tex.
Pen. Code Ann. § 46.04(a); Martinez v. State, 986 S.W.2d 779, 780 (Tex. App.-Dallas 1999, no
pet.). Possession is defined as "actual care, custody, control, or management." Tex. Pen. Code
Ann. § 1.07(a)(39) (Vernon 2003). To support a conviction for possession of a firearm, the
State must show (1) that the accused exercised actual care, control, or custody of the firearm, (2)
that the accused was conscious of his or her connection with it, and (3) that he or she possessed
the firearm knowingly or intentionally. See Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995); Jones v. State, 963 S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd).

 Possession is a voluntary act if the possessor knowingly obtains or receives the thing
possessed or is aware of his or her control of the thing for a time sufficient to permit the
possessor to terminate his or her control. Tex. Pen. Code Ann. § 6.01(b) (Vernon 2003). The
State may rely on direct or circumstantial evidence, but must prove that the "accused's
connection with the contraband was more than just 'fortuitous.'" Brown, 911 S.W.2d at 747. 
The State must prove this connection by establishing "affirmative links" which demonstrate the
accused was aware of the object, knew what it was, and recognized his or her connection to it. 
Gill v. State, 57 S.W.3d 540, 544 (Tex. App.-Waco 2001, no pet.). 

 Factors that may establish such affirmative links include whether: (1) the contraband
was  in  a  car  driven  by  the  accused; (2)  the  contraband  was  in  a  place  owned  by  the
accused; (3) the contraband was conveniently accessible to the accused; (4) the contraband was
in plain view; (5) the contraband was found in an enclosed space; (6) the contraband was found
on the same side of the car as the accused; (7) the conduct of the accused indicated a
consciousness of guilt; (8) the accused had a special relationship to the contraband; (9)
occupants of the automobile gave conflicting statements about relevant matters; and (10)
affirmative statements connect the accused to the contraband. Nguyen v. State, 54 S.W.3d 49, 53
(Tex. App.-Texarkana 2001, pet. ref'd). The State need not show a certain number of these
factors to make an affirmative connection between the accused and the firearm; the logical force
or the degree of connection is more important to our analysis. Davis v. State, 93 S.W.3d 664,
667-68 (Tex. App.-Texarkana 2002, pet. ref'd). Evidence which established only a strong
suspicion or a mere probability is insufficient to support a conviction. Young v. State, 752
S.W.2d 137, 141 (Tex. App.-Dallas 1988, pet. ref'd).

Legal Sufficiency

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt all essential elements of the
offense of unlawful possession of a firearm by a felon.

 In Davis, this Court heard a similar challenge to the legal and factual sufficiency of the
evidence. See Davis, 93 S.W.3d at 667. The State's evidence showed that authorities found a
shotgun containing a fired casing under the bed in the one-bedroom residence in which Davis
had lived for nearly one year. Id. Additionally, the police officer, responding to calls of a loud
argument between Davis and his wife, heard a shot fired from inside the house seconds after she
observed Davis lock himself inside. Id. From this evidence, this Court concluded that the State's
evidence was legally sufficient and that a rational jury could have found beyond a reasonable
doubt that Davis knowingly possessed the shotgun. Id. 

 In effect, the evidence in this case is comparable to that presented in Nguyen. See
Nguyen, 54 S.W.3d at 54-55. In that case, the driver of the car in which Nguyen was a passenger
and in which the firearm was found did not pull over immediately after an officer so directed. 
Id. From this delay, a rational trier of fact could have found an indication of consciousness of
guilt. Id. The police officer testified to having seen Nguyen lean between the front and back
seats, as if he were hiding the firearm. Id. Additionally, the driver and Nguyen gave
inconsistent reasons as to why they were going to Houston. Id. Viewing this evidence in the
light most favorable to the verdict, this Court concluded a rational jury could have found beyond
a reasonable doubt the essential elements of possession of a firearm by a felon. Id.

 Here, we find sufficient evidence. The shotgun was found in the cab of the truck in
which Smith was the only occupant. The jury also could have concluded that Smith's flight from
Grandfield was indicative of a consciousness of guilt. Additionally, the fact that the firearm was
on the floorboard of the truck could have led the jury to determine the firearm was easily
accessible to Smith. This evidence, viewed in the legal sufficiency prism, establishes more than
the mere presence of the firearm in the truck with Smith. From Smith's attempt to evade police,
the proximity and position of the firearm to Smith inside the truck, and the fact he was the sole
occupant of the truck, the jury could have rationally concluded beyond a reasonable doubt that
Smith exercised sufficient care, custody, and control of the firearm to be said to have knowingly
possessed the shotgun.

Factual Sufficiency

 Our factual sufficiency review is a closer call, but we conclude the evidence is factually
sufficient to support Smith's conviction. First, and most important, Smith was in exclusive
possession of the truck in which the weapon was located and had been in exclusive possession
thereof for at least two days before the chase and his arrest. Smith was driving the truck and
tried to flee apprehension. The weapon was in the cab of the truck, accessible to Smith. There is
no evidence anyone else had access to or control over the vehicle during Smith's two days of
unauthorized possession. There is also no evidence the weapon belonged to, or was placed in the
truck by, anyone other than Smith. Of course, there is no evidence of the source of the weapon.

 In Davis, the evidence that was legally sufficient was also factually sufficient in that the
evidence did not support an alternative theory of possession, nor did it suggest the firearm
belonged to anyone other than Davis. Davis, 93 S.W.3d at 668. The verdict, therefore, was not
against the overwhelming weight of the evidence. Id. In this case, there is no evidence the
firearm belonged to anyone other than Smith, and nothing other than speculation would suggest
any alternative theory of possession.

 Nguyen is worth our close examination, because the evidence against Nguyen was held
legally sufficient but factually insufficient. Nguyen, 54 S.W.3d at 55. Nguyen did not own the
car in which the officer found the gun. Id. Nguyen's delay in pulling over was only twenty
seconds, during which time the driver did not increase speed. Id. Moreover, even that delay in
pulling over could have been attributable to the absence of overhead lights on the patrol car. Id. 
This evidence, in conjunction with the fact that the officer did not see Nguyen with the firearm
and the lack of fingerprint evidence connecting Nguyen to the firearm, outweighed the evidence
supporting Nguyen's conviction. Id.

 In this case, Smith actively and clearly fled from apprehension. Smith's flight from 
Grandfield was certainly evidence of conscious guilt. Exactly why Smith exhibited his guilty
state of mind, whether because of the vehicle or the weapon, or both, is uncertain. Based on this
event, in a different case, the jury convicted Smith of unauthorized use of a motor vehicle, (5)
conduct which could have provided an alternate source for his consciousness of guilt. In other
words, it is not certain that Smith's flight necessarily indicated a consciousness of guilt solely
from possessing the weapon. Yet a rational jury could reasonably believe Smith's guilty
behavior sprung at least in part from the presence of the weapon.

 It is also true there was no testimony showing Smith holding or handling the firearm, nor
any fingerprint evidence connecting him with it. But Smith, the sole occupant of the truck
containing the weapon in the floorboard, fled apprehension. While Smith did not own the truck,
he had been in (unauthorized) possession of it for at least two days, without any evidence that
anyone else had possession of, or access to, the vehicle during that time. While the evidence is
certainly not conclusive about the location of the weapon in the vehicle, a rational jury could
reasonably believe from the evidence that the weapon was in the floor of the front seat,
reasonably accessible to Smith, or at least that such location was more likely than other, less
accessible, locations. While the chase-ending accident could have caused the weapon to move to
the location in which it was found, there is no evidence that such movement occurred.

 From our neutral review of the record, we hold that Smith's conviction was not against
the overwhelming weight of the evidence. Therefore, we conclude the State's evidence is
factually sufficient to support the jury's determination that Smith knowingly possessed the
firearm.

 Accordingly, we affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 19, 2003

Date Decided: September 17, 2003


Publish
1. Tex. Pen. Code Ann. § 46.04(a) (Vernon 2003).
2. [2]Smith successfully moved to try jointly cause numbers 20,991 (unlawful possession of a firearm
by a felon), 20,992 (evading arrest or detention), and 20,993 (unauthorized use of a motor vehicle). 
The jury, having found Smith guilty in all three cases and having found the enhancement paragraphs
true, assessed punishment at thirty, ten, and five years, respectively. His sentences will run
concurrently.

3. This denial is the subject of appeal in cause number 06-02-00144-CR.
4. Section 46.04(a) of the Texas Penal Code provides:


A person who has been convicted of a felony commits an offense if he possesses a
firearm: 

 (1) after conviction and before the fifth anniversary of the person's release
from confinement following conviction of the felony or the person's release from
supervision under community supervision, parole, or mandatory supervision,
whichever date is later; or 

 (2) after the period described by Subdivision (1), at any location other than
the premises at which the person lives. 
5. The subject of appeal in cause number 06-02-00145-CR.